IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| DET DALLAS CLINICS, LLC and TREND PHYSICIANS GROUP, INC., | § § | Case No. 26-35975 (Jointly Administered) |
| | § | |
| Debtors. | § | **Jeffrey P. Norman** |
| | § | |

**MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104(A), OR IN THE ALTERNATIVE, FOR CONVERSION TO CHAPTER 7 UNDER 11 U.S.C. § 1112(B)**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY**

TED Ventures, LLC and Trend Medical Management, LLC (collectively, "Creditors" or "Movants") file this Motion pursuant to 11 U.S.C. § 1104(a), and in the alternative pursuant to 11 U.S.C. § 1112(b), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. Creditors seek an order pursuant to 11 U.S.C. § 1104(a)(1) appointing a Chapter 11 trustee for both Debtors, DET Dallas Clinics, LLC (“DET”) and Trend Physicians Group, Inc.

("TPG"). Cause exists based on fraud, dishonesty, incompetence, and gross mismanagement by Atul "Lucky" Chopra ("Chopra"), who exercises sole and unfettered control over both Debtors.

2. On or about August 25, 2026, the Debtors amended their voluntary petitions to withdraw their elections to proceed under Subchapter V of Chapter 11. These cases therefore proceed as ordinary Chapter 11 cases, and the remedies of 11 U.S.C. §§ 1104 and 1112, including appointment of a trustee, creditor election of a trustee under § 1104(b), and conversion or dismissal for cause, are now available.

3. As set forth below, Chopra orchestrated a scheme to acquire medical practice assets worth more than $13 million from Creditors while never intending to pay the agreed consideration. He bounced checks, defaulted on promissory notes, diverted receivables, stripped collateral, commingled funds through undocumented intercompany transfers exceeding $29 million, and ultimately filed these bankruptcy cases on the last business day before trial in the state court action brought by Creditors to recover the amounts owed.

**4.** The facts set forth in this Motion are supported by the Declaration of Derek Gove, filed contemporaneously herewith and incorporated herein by reference (the "Gove Declaration"). Mr. Gove is the Managing Partner of TED Ventures and served as Chief Executive Officer of AD Dallas Clinics, LLC, now known as DET, following the closing of the transaction described below.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this District pursuant to 28 U.S.C. § 1408.

# FACTUAL BACKGROUND

## A. Corporate Structure and Chopra's Control

6. The corporate structure at issue is as follows: Chopra personally owns and controls Zoo Capital Holdings, LLC ("Zoo Capital"), a non-debtor entity. Zoo Capital in turn holds 100% of the equity of DET Dallas Clinics, LLC ("DET"), formerly known as AD Dallas Clinics, LLC, one of the two Debtors in these cases. DET owns 100% of Trend Physicians Group, Inc. ("TPG"), the second Debtor. Notably, the two solvent links in this chain—Chopra individually and Zoo Capital—did not file for bankruptcy. Gove Declaration ¶¶ 23–24.

7. Chopra exercises sole and final payment authority over every entity in the corporate group, including DET, TPG, Zoo Capital, and all affiliated non-debtor entities. He decided what was paid and what was not, directed treasury personnel to pull funds from whichever entity had them, and permitted no cash-control system. There is no independent oversight of disbursements and no separation between Chopra's personal financial decisions and those of the corporate entities he controls. Gove Declaration ¶ 25.

## B. The APCA Transaction

8. Pursuant to an Asset Purchase and Contribution Agreement dated December 12, 2023 (the "APCA"), Trend Medical Management, LLC ("TMM") contributed, assigned, transferred, and conveyed substantially all of its assets, including its ownership interest in TPG, to Zoo Capital, which in turn contributed those assets down to AD Dallas (now DET). The contributed assets were valued at more than $13 million by the parties and by VMG, the buyer’s own third-party valuation consultant. The agreed purchase price under the APCA was $12 million, payable in three components. Gove Declaration ¶¶ 9–12.

9. First, Base Cash Consideration of $3,000,000 was due at closing. That payment was not made, and checks subsequently delivered by defendants were dishonored for insufficient funds, resulting in approximately $750,000 in returned items. Second, a Subordinated Promissory Note in the principal amount of $3,000,000, payable quarterly and bearing interest at the applicable federal rate of 5.16%, was executed with AD Dallas as maker and TMM as payee; after two quarterly payments, the payment account was left without funds by reason of other payments and transfers authorized by Chopra, payment ceased, and the full balance was accelerated in accordance with its terms. Third, Rollover Securities valued at $6,000,000 were to be issued to Creditors by Zoo Capital as "Parent" under Section 2.05 of the APCA, and were never issued or delivered. Gove Declaration ¶¶ 12, 17–20.

10. In sum, Creditors contributed assets worth more than $13 million and received virtually nothing of the agreed $12 million purchase price. Transaction damages total not less than $9,208,849, consisting of $708,849 in unpaid Base Cash Consideration after credit for amounts actually received, $2,500,000 in accelerated Note principal, and $6,000,000 in undelivered Rollover Securities, plus accrued interest and consequential damages. Gove Declaration ¶¶ 21–22.

**C. Fraudulent Factoring of Receivables**

11. Under the Security Agreement executed contemporaneously with the APCA, $15 million of accounts receivable were to serve as collateral securing the obligations owed to Creditors, evidenced by an executed UCC-1 financing statement. In November 2023, Chopra personally showed Mr. Gove approximately $47 million in available receivables from which he stated the $15 million of collateral would be reserved. On or about December 28, 2023—only sixteen days after the APCA closing—Chopra personally signed documents factoring

approximately $47 million in receivables to a third party for approximately $6.1 million in immediate cash. Instead of preserving the collateral pledged to Creditors, Chopra converted the receivables to cash at a steep discount and diverted the proceeds to other uses. Gove Declaration ¶¶ 13, 33–36.

**D. Undocumented Intercompany Transfers and Diversion of Funds**

12. As of fiscal year-end 2023, the operating entities' own books recorded $29,142,894.89 in intercompany payables to entities Chopra controls outside the operating group. These transfers were largely undocumented—no loan agreements, no promissory notes, no board resolutions, no interest, and no repayment terms—and bore no indicia of arm's-length transactions. Gove Declaration ¶¶ 37–38.

13. Among these transfers, $15,798,654.68 flowed from Cognizant Management Solutions, LLC—the entity that issued Creditors' paychecks—to Chopra Imaging Centers, Inc., an entity whose own bank account reflected a single transaction of $25.00 across December 2023 and January 2024. Funds were further diverted to Chopra's personal restaurant ventures and real-estate entities, none of which have any connection to the medical practice operations from which the revenues were generated. Gove Declaration ¶¶ 39–40.

**E. DET Was Never Capitalized**

14. DET Dallas Clinics, LLC—the entity designated as maker of the $3,000,000 Subordinated Promissory Note and obligor under the APCA—was purely an acquisition entity. It had no employees, no bank account, no billing operations, and no revenue of its own. It was never capitalized to perform any of the obligations it undertook under the APCA. Gove Declaration ¶¶ 26, 73.

15. Similarly, Zoo Capital Holdings, LLC had no bank account of its own and held assets insufficient to satisfy the obligations it undertook. Gove Declaration ¶ 27.

**F. The Merrill Lynch Account**

16. The Chopra group maintained a Merrill Lynch investment account (No. 23V-02863), titled in the names of Cognizant Management Solutions, LLC and Advanced Diagnostics Health System, LLC, at 1911 Bagby Street, Houston, Texas. That account held approximately $11.27 million as of September 29, 2023 and approximately $9.85 million as of December 29, 2023. Chopra alone controlled that account. The group's own Chief Financial Officer, Steven Ryan Reneau, had no access to it and was required to ask Chopra to have Merrill Lynch furnish a statement so the auditors could close the audit. Gove Declaration ¶¶ 29–31.

17. The audited financial statements of the group report cash and cash equivalents of $5,659,475 as of December 31, 2023—more than sufficient to pay the $3,000,000 Base Cash Consideration owed to Creditors at closing. The funds existed; Chopra chose not to pay. Gove Declaration ¶ 32.

**G. Eve-of-Trial Bankruptcy Filing**

18. In April 2025, Creditors filed suit against DET and related entities in the 162nd Judicial District Court of Dallas County, Texas, Cause No. DC-25-05848. The litigation spanned more than sixteen months, including extensive discovery, depositions, and three trial settings. Discovery closed on February 20, 2026, and trial was set for August 17, 2026—the third trial setting in the case. On August 14, 2026, the last business day before trial, both DET and TPG filed Chapter 11 petitions in this Court, triggering the automatic stay and halting the state-court proceedings on the eve of trial. Gove Declaration ¶¶ 45–48, 57–64.

19. Further evidencing the manipulative nature of the filing, on the same day it filed its petition, AD Dallas Clinics, LLC changed its legal name to "DET Dallas Clinics, LLC," which appears to have been intended to obscure the entity's connection to the state-court litigation and make it more difficult for Creditors to locate the bankruptcy case. Gove Declaration ¶¶ 51, 65.

## LEGAL ARGUMENT

### A. Cause Exists Under § 1104(a)(1) for Appointment of a Chapter 11 Trustee

20. Section 1104(a)(1) provides that the Court shall order the appointment of a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case." 11 U.S.C. § 1104(a)(1). Appointment is mandatory once cause is established. The movant bears the burden of proving cause by a preponderance of the evidence. S.I. Acquisition, Inc. v. Eastway Delivery Service, 817 F.2d 1142, 1149 (5th Cir. 1987).

21. The Fifth Circuit has recognized that the statutory grounds—fraud, dishonesty, incompetence, and gross mismanagement—are illustrative, not exhaustive, and that courts should consider the totality of the circumstances. Id. Here, each of the statutory grounds is independently satisfied and establishes cause for appointment of a trustee under § 1104(a)(1).

> ***(i) Dishonesty: Bounced Checks and Broken Promises.*** Chopra caused DET and Zoo Capital to tender checks at closing that bounced, promised a $3 million Base Cash Consideration that was never paid, executed a promissory note on which the obligor immediately defaulted, and committed to issue $6 million in Rollover Securities that were never delivered. These are not mere breaches of contract—they reflect a pattern of deliberate dishonesty in which Chopra made promises he never intended to keep in order to induce Creditors to transfer valuable assets. This establishes cause under § 1104(a)(1).

> ***(ii) Fraud: Factoring Pledged Collateral.*** Within sixteen days of closing, Chopra caused the factoring of approximately $47 million in receivables that were to serve as collateral for the Creditors' claims. Converting a creditor's collateral to cash and diverting the proceeds constitutes fraud within the meaning of § 1104(a)(1) and independently establishes cause for appointment of a trustee.

***(iii) Gross Mismanagement: Undocumented $29 Million in Transfers.*** The movement of $29,142,894.89 among Chopra-controlled entities without documentation, without board approval, and without any legitimate business purpose constitutes gross mismanagement of the highest order and establishes cause under § 1104(a)(1). These funds were diverted to Chopra's personal restaurant and real-estate ventures while obligations to Creditors remained unpaid.

***(iv) Incompetence: Failure to Capitalize the Obligor.*** DET was designated as the purchaser and primary obligor in a transaction involving more than $12 million in consideration, yet DET had no employees, no bank account, no billing operations, and no revenue. Creating a shell entity to assume obligations it can never perform is either deliberate fraud or gross incompetence—either of which establishes cause under § 1104(a)(1).

**B. The Debtor-in-Possession Has an Irreconcilable Conflict of Interest**

22. Independent of the statutory "cause" analysis, appointment of a trustee under § 1104(a) is warranted because the debtor-in-possession has an irreconcilable conflict of interest. Chopra controls both DET and TPG as their sole managing member and decision-maker. At the same time, the Creditors' claims run directly against Chopra individually, Zoo Capital, and the Chopra-controlled affiliates that participated in the diversion of funds.

23. A debtor-in-possession controlled by the very person whose conduct gives rise to the Creditors' claims cannot be expected to investigate, pursue, or recover on those claims. Chopra cannot cause DET to sue Chopra. He cannot cause the estate to pursue alter ego claims against his own affiliates or to recover the $29 million in undocumented transfers that flowed to his personal ventures. This structural conflict makes continued management by the debtor-in-possession untenable and independently supports appointment of a trustee under § 1104(a).

**C. The Alter Ego Doctrine Supports Appointment of a Trustee**

24. Under Texas law, the corporate veil may be pierced where there is a unity of interest between the individual and the corporation such that the separate personalities no longer exist, and adherence to the fiction of separate existence would promote injustice. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). Relevant factors include undercapitalization,

commingling of funds, failure to observe corporate formalities, and use of the corporate form to perpetrate fraud. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

25. Every indicium of alter ego is present here. DET was never capitalized. There is a complete unity of interest between Chopra and the entities he controls—he exercises sole payment authority, comingles funds freely, maintains no corporate formalities, and uses the corporate entities interchangeably for his personal benefit. The undocumented transfer of $29 million among entities, the diversion of medical practice revenues to restaurants and real estate, and the use of an uncapitalized shell to assume obligations all demonstrate that the corporate form is a sham. These circumstances establish cause under § 1104(a)(1).

26. These alter ego considerations further support the appointment of an independent trustee under § 1104(a)(1), who can investigate and pursue claims against Chopra and his affiliates—claims that the debtor-in-possession, controlled by Chopra, will never pursue.

**D. Alternative Relief: Conversion to Chapter 7 Under § 1112(b)**

**27.** Should the Court decline to appoint a Chapter 11 trustee, Creditors alternatively request conversion of these cases to cases under Chapter 7 pursuant to 11 U.S.C. § 1112(b). The same facts that establish cause under § 1104(a)(1) also establish cause under § 1112(b)(4), including gross mismanagement of the estate and the substantial or continuing loss to the estate with no reasonable likelihood of rehabilitation. DET's own amended petition reports estimated assets of $0 to $50,000 against liabilities exceeding $10 million, and DET has no employees, no bank account, no billing operations, no revenue, no patients, and no business operations of any kind. There is no going concern to reorganize. Gove Declaration ¶¶ 71–74. In either event, an independent fiduciary—a Chapter 11 trustee or a Chapter 7 trustee—must displace Chopra in order for the estates' claims against Chopra and his affiliates to be investigated and pursued.

## REQUEST FOR ELECTION OF A TRUSTEE UNDER § 1104(B)

28. Upon entry of an order appointing a Chapter 11 trustee under § 1104(a), Creditors respectfully request that the Court direct the United States Trustee to convene a meeting of creditors for the purpose of electing a trustee within thirty (30) days of the entry of the order of appointment, as provided by 11 U.S.C. § 1104(b) and § 702 of the Code.

## PRAYER

WHEREFORE, Movants TED Ventures, LLC and Trend Medical Management, LLC respectfully request that this Court:

a) Enter an order pursuant to 11 U.S.C. § 1104(a)(1) appointing a Chapter 11 trustee for DET Dallas Clinics, LLC (Case No. 26-35975) and TREND Physicians Group, Inc. (Case No. 26-35976) based on fraud, dishonesty, incompetence, gross mismanagement, the irreconcilable conflict of interest, and the alter ego circumstances described above;

b) Direct the United States Trustee to convene a meeting of creditors within thirty (30) days of the entry of the appointment order for the purpose of permitting creditors to elect a trustee pursuant to 11 U.S.C. § 1104(b) and § 702 of the Code;

c) In the alternative, if the Court declines to appoint a Chapter 11 trustee, enter an order converting these cases to cases under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b);

d) Enter an order substantially in the form of the proposed order attached hereto as Exhibit A and incorporated herein by reference; and

e) Grant such other and further relief as this Court deems just and proper.

Dated: August 25, 2026

Respectfully Submitted,

CM LAW, LLP

By: /s/ Richard Grant
Richard G. Grant
Tex. Bar No. 08302650

National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR TED VENTURES, LLC and TREND MEDICAL MANAGEMENT, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he has transmitted a true and correct copy of the foregoing (a) via the Court's Electronic Case Filing system to all persons participating therein on August 25, 2026; and (b) via United States First Class Mail, postage prepaid, on August 25, 2026 to each of the mailing addresses indicated on the service list attached hereto.

/s/ Richard Grant
Richard G. Grant

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for the Debtors and counsel for the Movants held an extensive conference by telephone on August 24, 2026 regarding case administration and the relief requested herein, and the parties were unable to reach a resolution of this Motion at this time. The parties will continue to discuss the relief requested prior to the objection deadline and the hearing date. The motion is opposed.

/s/ Richard Grant
Richard G. Grant

**PROPOSED ORDER**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| DET DALLAS CLINICS, LLC and<br>TREND PHYSICIANS GROUP, INC., | §<br>§ | Case No. 26-35975<br>(Jointly Administered) |
| | § | |
| Debtors. | § | **Jeffrey P. Norman** |
| | § | |

**ORDER GRANTING MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE, OR IN THE ALTERNATIVE, FOR CONVERSION TO CHAPTER 7**

Upon consideration of the Motion for Appointment of a Chapter 11 Trustee, or in the Alternative, for Conversion to Chapter 7 filed by TED Ventures, LLC and Trend Medical Management, LLC (collectively, "Creditors"), the Declaration of Derek Gove filed in support thereof, and after notice and a hearing, the Court finds that cause exists under 11 U.S.C. § 1104(a)(1) based on fraud, dishonesty, incompetence, gross mismanagement, the irreconcilable conflict of interest, and the alter ego circumstances described in the Motion. It is therefore:

ORDERED that the Motion is GRANTED, and a Chapter 11 trustee shall be appointed for DET Dallas Clinics, LLC (Case No. 26-35975) and TREND Physicians Group, Inc. (Case No. 26-35976);

ORDERED that DET Dallas Clinics, LLC and TREND Physicians Group, Inc. shall cease to be debtors in possession upon the appointment of the Chapter 11 trustee, and shall promptly turn over to the trustee all property of the estates and all books, records, and financial information relating to the Debtors;

ORDERED that the United States Trustee shall convene a meeting of creditors within thirty (30) days of the entry of this Order for the purpose of permitting creditors to elect a trustee pursuant to 11 U.S.C. § 1104(b) and § 702 of the Code;

ORDERED that, if no trustee is elected, the United States Trustee shall appoint a disinterested person to serve as trustee; and

ORDERED that, in the alternative, if the Court declines to appoint a Chapter 11 trustee, these cases are converted to cases under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b); and

ORDERED that the Clerk shall serve a copy of this Order on all parties in interest.

SIGNED this ____ day of __________, 2026.

HON. JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Richard G. Grant
CM LAW, LLP
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR TED VENTURES, LLC
and TREND MEDICAL MANAGEMENT, LLC