CMLaw
CLIENT MINDED ADVOCATES

**Richard G. Grant | PARTNER**
Licensed in Texas
Direct: (214) 210-2929
rgrant@cm.law

August 25, 2026

**VIA ELECTRONIC MAIL AND CERTIFIED MAIL**

Susan Tran Adams
Tran Singh, LLP
2502 La Branch Street
Houston, Texas 77004

**Re:** ***In re DET Dallas Clinics, LLC*, Case No. 26-35975, and *In re TREND Physicians Group, Inc.*, Case No. 26-35976 — Demand to Investigate and Pursue Estate Causes of Action**

Dear Ms. Adams:

We represent TED Ventures, LLC and Trend Medical Management, LLC, creditors in the above-referenced cases. This letter constitutes a formal demand upon the Debtors-in-Possession to investigate and pursue estate causes of action against Atul "Lucky" Chopra and affiliated entities, as required under *Louisiana World Exposition v. Federal Insurance Co*., 858 F.2d 233 (5th Cir. 1988).

**Identification of Colorable Claims**

1. **Avoidance under § 548 (actual fraudulent transfer):** On December 28, 2023—sixteen (16) days after the closing of the APCA—Chopra caused approximately $47,000,000 in accounts receivable to be factored to a third-party factor for approximately $6,100,000. Those receivables were pledged as collateral securing the Subordinated Promissory Note under a Security Agreement and UCC-1 filing. By factoring the receivables instead of preserving them as collateral, Chopra stripped the security that was promised to the Creditors and converted the collateral to cash at a steep discount. The proceeds of the factoring were not applied to the obligations owed under the APCA; instead, they were diverted through the Chopra-controlled entity network. The timing, insider involvement, grossly inadequate consideration, and stripping of pledged collateral support the conclusion that the transfer was made with actual intent to hinder, delay, or defraud creditors within the meaning of 11 U.S.C. § 548(a)(1)(A).

2. **Avoidance under §§ 544/548 (constructive fraudulent transfer):** At fiscal year end 2023, intercompany transfers totaling $29,142,894.89 were made to and among the following Chopra-controlled entities, among others: Zoo Capital Holdings, LLC— the non-debtor parent entity, sole equity holder of DET, and buyer under the APCA, which had no bank account of its own and never funded its $12,000,000 obligation; Cognizant Management Solutions, LLC—the entity that issued the Creditors' paychecks and recorded $15,798,654.68 in intercompany payables to Chopra Imaging Centers, Inc.; Advanced Diagnostics Health System, LLC—the co-holder with Cognizant Management Solutions, LLC of Merrill Lynch investment account no. 23V-02863 at 1911 Bagby Street, Houston, Texas 77002, which held $11,271,198.61 as of September 29, 2023 and $9,849,621.74 as of December 29, 2023, under Chopra's sole control; Chopra Imaging Centers, Inc.—the recipient of $15,798,654.68 from Cognizant Management Solutions, LLC, whose own bank account reflected a single transaction of $25.00 across December 2023 and January 2024; Care Capital, LLC; Care Capital SPE, LLC; Texas Brain Center, LLC; Diagnostic, Interventional, and Vascular Consultants, LLC; AD Hospital East, LLC; River Oaks Hospital & Clinics, LLC; Advanced Houston Specialty Hospital, LLC; Advanced Dallas Hospital & Clinics, LLC; Advanced Surgeons & Physicians Network, Inc.; Chopra's unnamed restaurant entities; and Chopra's unnamed real-estate entities. These transfers were made on journal entries alone—without promissory notes, intercompany agreements, board resolutions, interest, maturity dates, or repayment terms. The transferor entities, including DET and TPG, received no reasonably equivalent value, while the transferee entities were undercapitalized and lacked the ability to repay. All of these entities shared the same address at 1911 Bagby Street, Houston, Texas 77002. Chopra alone controlled the movement of funds among these entities, and the group's own Chief Financial Officer had no access to the principal investment account. These transfers are avoidable under 11 U.S.C. §§ 544 and 548(a)(1)(B).

3. **Avoidance under § 547 (preferential transfers):** Upon information and belief, transfers were made to the above-named Chopra-controlled entities within ninety (90) days of the August 14, 2026 petition date, or within one (1) year given Chopra's insider status under 11 U.S.C. § 101(31), on account of antecedent debts, while the Debtors were insolvent. Those transfers enabled the transferees to receive more than they would have received in a hypothetical Chapter 7 liquidation and are avoidable under 11 U.S.C. § 547(b).

4. **Breach of fiduciary duty:** Chopra owed fiduciary duties of loyalty and care to DET and TPG and their creditors in the zone of insolvency. Chopra breached those duties by: (a) causing DET to assume a $12,000,000 obligation under the APCA without capitalizing it to perform; (b) stripping the receivables collateral sixteen (16) days after closing; (c) diverting operating revenues to his personal restaurant and real-estate ventures; (d) maintaining sole control over the Merrill Lynch investment account while keeping the operating accounts underfunded; and (e) filing the bankruptcy petitions on the eve of trial to prevent adjudication of the Creditors' claims. These acts support recovery for the

estates and demonstrate the need for independent investigation and prosecution of the claims.

5. **Recovery of diverted funds:** The operating entities' audited financial statements for the fiscal year ending December 31, 2023 reported cash and cash equivalents of $5,659,475.00—more than sufficient to pay the $3,000,000 Base Cash Consideration. Despite the availability of those funds, Chopra chose not to pay, instead delivering closing checks whose honor depended on him alone; those checks were dishonored for insufficient funds, and the $750,000 in returned items damaged the Creditors' banking relationships. These facts, combined with the $29,142,894.89 in intercompany transfers and the factoring of $47,000,000 in receivables, demonstrate a pattern of asset stripping that deprived the Debtor estates of value that should be recovered for the benefit of creditors.

In sum, the estate causes of action identified above involve transfers and diversions totaling in excess of $76,000,000 (comprising approximately $29,142,894.89 in undocumented intercompany transfers and approximately $47,000,000 in factored receivables). These represent the primary—and potentially the only—source of meaningful recovery for creditors of these estates, given that DET reports assets of less than $50,000 and TPG reports assets of $100,001 to $500,000. The Debtors-in-Possession have a fiduciary obligation to investigate and pursue these claims. Their failure to do so would constitute a breach of the duties imposed by 11 U.S.C. §§ 1106(a)(3)–(4) and 1107(a).

**Demand**

We hereby demand that within ten (10) days of this letter, the Debtors-in-Possession advise undersigned counsel in writing of their intent with respect to these claims, and that within twenty-one (21) days of this letter, the Debtors-in-Possession:

(a) Investigate the above-described causes of action;
(b) Commence adversary proceedings to recover estate assets; and
(c) Advise undersigned counsel in writing of the actions taken, including written confirmation of whether the Debtors-in-Possession intend to investigate and prosecute each of the causes of action identified above, the identity of the counsel retained to do so, the source of funding for that prosecution, and the date by which the adversary proceedings will be commenced.

If the Debtors-in-Possession fail or refuse to act within the periods set forth above, Creditors will file a motion with the Bankruptcy Court seeking derivative standing to pursue these claims on behalf of the estates under *Louisiana World Exposition*, 858 F.2d at 247. For these purposes, a failure to respond, a response that does not confirm an unqualified intent to investigate and prosecute the identified causes of action, or a refusal to commit to a date certain for commencing adversary proceedings will each be treated as a refusal to act. The statute of limitations under § 546(a) runs on August 14, 2028.

We note that the DIP has an irreconcilable conflict of interest in pursuing these claims because Chopra controls both Debtor entities and the claims run directly against Chopra and his affiliates. This conflict itself may constitute grounds for appointment of a trustee under § 1104(a).

This letter is sent without waiver of any rights or claims of our clients. Please direct all responses to the undersigned.

Respectfully,

Richard G. Grant
Partner

RGG/hl